# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MURRAY, JR., <br><br> Plaintiff, <br><br> v. <br><br> THE ELATIONS COMPANY, LLC, *et al.*, <br><br> Defendants. | Case No. 13-cv-02357-BAS(WVG) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** <br><br> (ECF No. 9) |

On October 1, 2013, Plaintiff William Murray Jr. ("Plaintiff") commenced this class action arising out of the advertising and sales of a glucosamine- and chondroitin-based health supplement against The Elations Company, LLC and Beverages Holdings, LLC (collectively, "Defendants") alleging violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA") and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and breach of express warranty. Defendants now move to dismiss Plaintiff's Complaint ("Complaint") under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendants' motion to dismiss **WITH LEAVE TO AMEND**.

## I. BACKGROUND

Plaintiff alleges in the Complaint that Defendants "distribute, market, and sell 'Elations' a line of Glucosamine- and Chondroitin-based supplements that purportedly provide a variety of health benefits focused on improving joint health, mobility, flexibility, and lubrication." (Complaint at ¶¶ 1, 14.) According to Plaintiff, he "purchased Defendants' Elations products from time to time" for "approximately two years leading up to May 2013." (*Id.* at ¶ 11.) Plaintiff alleges that "[d]uring those times, and on May 15, 2013, he was exposed to, read and relied upon Defendants' representations regarding the joint-health benefits of the Elations products by reading the Elations product label in a Ralph's store near his home in Laguna Hills, California." (*Id.*) According to Plaintiff, he also made "additional purchases of the Elations products" at "various stores in Orange County, California." (*Id.*)

Plaintiff contends that he purchased the Elations products "[i]n reliance on the claims listed on the product label…and specifically those claims listed on the product label, that Elations would give him 'healthier joints' and 'improve joint comfort.'" (*Id.*) Plaintiff alleges he "purchased the product believing it would provide the advertised joint-health benefits and improve his joint soreness and comfort." (*Id.*) Plaintiff contends he "consumed the product regularly for several days, but did not experience the intended, advertised benefits." (*Id.*) Plaintiff further alleges he purchased the product at Ralphs for approximately $8.65 and spent "approximately the same amount on other occasions at various stores." (*Id.*)

Plaintiff additionally alleges that Defendants presently offer two forms of the Elations product – a pre-made liquid version and a pre-mixed powder version –

online and in stores. (*Id*. at ¶¶ 15-16.) Plaintiff alleges that Elations' product label for both versions represents that Elations "Helps Improve Your Joint Comfort" and "Helps Improve Your Joint Flexibility" and that he relied on these representations. (*Id*.; *see also* ¶¶ 4, 11, 23-25, Ex. A.) Plaintiff also alleges that since the launch of Elations in 2004, "Defendants have consistently conveyed the message to consumers throughout California that the Elations products will reduce joint pain and increase 'joint comfort' and 'joint flexibility.'" (*Id*. at ¶ 17; *see also* ¶¶ 23-25.) Plaintiff further alleges that Elations' website and television commercials "repeat and reinforce" the joint-health statements made on the packaging and labeling, including one commercial that represents Elations is "'[c]linically proven to improve joint comfort in as little as 6 days'" and another commercial that claims Elations "'renews cartilage; cushions joints; improves flexibility.'" (*Id*. at ¶¶ 26-27.)

Plaintiff also contends that while Elations contains more than two ingredients, the two "primary active ingredients" which "Defendants both prominently display on its packaging and diligently promote as providing the purported joint-health benefits" are glucosamine and chondroitin. (*Id*. at ¶¶ 17-19.) Plaintiff alleges that while the "minor ingredients are also not effective in providing the joint-health benefits represented by Defendants," "the focus is on the uniform false and deceptive representations and omissions that Defendants make about glucosamine and chondroitin on the package labeling of each Elations product." (*Id*. at ¶ 18.) Plaintiff contends that contrary to the stated representations on the Elations labeling and packaging, there is "no competent scientific evidence" and "Defendants do not possess (and have not possessed) competent scientific evidence" that taking glucosamine and chondroitin, "together or in isolation" can provide the advertised joint-health and cartilage benefits, including relieving the major symptoms of arthritis or any other joint-related ailments. (*Id*. at ¶¶ 21-22, 28-29.) In support of his position, Plaintiff cites numerous studies which he alleges "confirm that the

representations made on the Elations product label…are false and misleading." (*Id.* at ¶¶ 30-52.)

On October 1, 2013, Plaintiff commenced this class action. In his Complaint, Plaintiff asserts three claims for: (1) violation of the CLRA, (2) violation of the UCL, and (3) breach of express warranty. Defendants now move to dismiss the Complaint under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). Plaintiff opposes.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead a claim with enough specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering such a motion, the court must accept all allegations of material fact pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic  recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)).  Furthermore, a

court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the…laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III.  DISCUSSION

### A.  Incorporation by Reference

As an initial matter, Defendants request that the Court consider Elations' entire packaging under the "incorporation by reference" doctrine. (ECF No. 9-1 ("Mot.") at p. 4, n. 1.) Defendants argue that the entire packaging should be considered in light of Plaintiff's allegations that he "read and relied upon" Defendants' statements on the packaging. (*Id.* (citing Complaint at ¶ 11).) In support of this request, Defendants attach a copy of the Elations product packaging that has been in use since August 26, 2010 to their motion to dismiss. (*Id.*; *see also* ECF No. 9-3 ("Klene Decl.") at ¶ 3, Ex. A.)

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by the parties may also be considered under the "incorporation by reference" doctrine. *Fecht v. Price Co.,* 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Moreover, the court

may consider the full text of those documents even when the complaint quotes only selected portions. *Id.* If a defendant offers such a document, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In his Complaint, Plaintiff alleges that "[f]or approximately two years leading up to May 2013, [he] purchased Defendants' Elations products from time to time." (Complaint at ¶ 11.) Plaintiff does not identify which Elations product or products – the liquid or powder version – he purchased and used. He simply alleges that "he was exposed to, read and relied upon Defendants' representations…by reading the Elations product label," and "[i]n reliance on the claims listed on the product label…purchased the Elations product." (*Id.*) Plaintiff claims he specifically relied upon the claims listed on the product label that Elations would give him "healthier joints" and "improve joint comfort." (*Id.*) Plaintiff further contends that "the advertising and marketing messages for [both] products are nearly identical." (*Id.* at ¶ 15.)

Plaintiff attaches as Exhibit A to his Complaint incomplete copies of various labels which have been used for the liquid and powder versions of Elations. (*Id.* at ¶¶ 2, 4, 15, 17, 23, Ex. A.) The labels appear to have changed over time. (*Cf. id.* at Ex. A, p. 1 and p. 2.) Plaintiff acknowledges the variation, noting that "Defendants further warranted *at some point* during the class period that the claimed benefits could be received in as little as 6 days." (*Id.* at p. 2 (emphasis added).) While Exhibit A only shows the front label on the liquid version, and front and partial back label of the powder version, Plaintiff describes all sides of the various labels in his Complaint. (*Id.* at ¶¶ 23-25.) Plaintiff alleges that the product packaging makes the following representations:

- "Healthier Joints;"
- "Improves Joint Comfort in 6 Days;"

1      • "Improves Joint Comfort When Used Everyday;"

2      • "Helps Improve Your Joint Comfort;" and

3      • "Helps Improve Your Joint Flexibility."

4 (*Id.* at ¶¶ 5, 23-25, Ex. A).

5         The label attached by Defendants to their motion to dismiss appears to be identical to at least one version of the label referenced in and attached to the Complaint.[1] Plaintiff also does not contest the authenticity of the label attached by Defendants. Therefore, the Court will take into account the label attached to Defendants' motion to dismiss under the incorporation by reference doctrine.

### B. Judicial Notice

Defendants also request that the Court take judicial notice of two judicial opinions issued in *McCrary v. The Elations Co., LLC*, No. EDCV 13-0242 JGB (OPx) (C.D. Cal.) ("*McCrary*"). (ECF No. 9-2.) When ruling on a Rule 12(b)(6) motion to dismiss, courts may consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Under Rule 201 of the Federal Rules of Evidence, Courts may take judicial notice of matters of public record, including judicial opinions. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Accordingly, the Court finds it appropriate to take judicial notice of the two opinions issued in *McCrary*.[2]

### C. Plaintiff's UCL and CLRA Claims

Defendants move to dismiss Plaintiff's UCL and CLRA claims on the basis that the Complaint does not *plausibly* plead that the statements in Elations advertising are false. (Mot. at pp. 9-14.) Defendants argue Plaintiff fails (1) to

---

[1] The label attached to Defendants' motion to dismiss does not include the statement: "Improves Joint Comfort in 6 Days." (*See* ECF No. 9-3.)

[2] However, the Court will hereinafter refer to the Westlaw citations for these opinions.

allege any scientific studies that address all of the active ingredients in Elations—glucosamine, chondroitin, boron, and calcium; and (2) to link his alleged studies about osteoarthritis to Defendants' actual representations. (*Id*. at pp. 13-14.) In other words, the Complaint fails to link the results of the scientific studies Plaintiff cites to "confirm that the representations made on the Elations product label…are false and misleading" with Defendants' advertisements. (Complaint at ¶ 30; Mot. at pp. 9-14.)

The UCL prohibits any "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co*., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. *Saunders v. Super. Court*, 27 Cal.App.4th 832, 838–39 (1994). In addition, a business practice "may be unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003). Plaintiff here pleads each prong of the UCL. He alleges that Defendants acted unlawfully by making representations and omissions of material facts in violation of California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709 (fraudulent deceit), and 1711 (deceit with intent to defraud), California Business and Professions Code section 17500, *et seq*. (False Advertising Law), the CLRA, and the common law. (Complaint at ¶ 76.) Based on the same conduct, Plaintiff further alleges that Defendants' "acts, omissions, misrepresentations, practices and nondisclosures" constitute unfair business acts and practices. (*Id*. at ¶¶ 78-79.) Lastly, Plaintiff alleges that Defendants' "claims, nondisclosures and misleading statements" are false, misleading and/or likely to deceive the consuming public, and Defendants' labeling and packaging constitutes unfair, deceptive, untrue and misleading advertising. (*Id*. at ¶¶ 81-82.)

Plaintiff also asserts a claim for a violation of the CLRA. He alleges Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a):

> (5) Representing that [the Products] have…approval, characteristics,…uses [and] benefits . . . which [they do] not have…[;]
>
> (7) Representing that [the Products] are of a particular standard, quality or grade…if [they are] of another[;]
>
> (9) Advertising goods… with intent not to sell them as advertised[; and]
>
> (16) Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

(Complaint at ¶ 67.)

In order to sufficiently plead a claim for false and misleading advertising under the UCL and CLRA, Plaintiff must plausibly allege that the claims in Defendants' marketing or advertising are false or misleading. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (claims under the UCL and CLRA are governed by the "reasonable consumer test," which requires a showing that members of the public are likely to be deceived by the subject representation); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal.App.4th 1336, 1342 (2003). A "naked assertion that the representation is misleading is nothing more than a legal conclusion," which the court need not accept as true. *Otto v. Abbott Labs., Inc.*, 2013 U.S. Dist. LEXIS 53287, at *8 (C.D. Cal. Mar. 15, 2013); *Iqbal*, 556 U.S. at 678. For the reasons below, the Court finds that Plaintiff fails, in part, to meet this pleading threshold.

Plaintiff alleges Defendants made the following false or misleading statements on the Elations products labels: (1) "Healthier Joints;" (2) "Improves Joint Comfort in 6 Days;" (3) "Improves Joint Comfort When Used Everyday;" (4) "Helps Improve Your Joint Comfort;" and (5) "Helps Improve Your Joint Flexibility."

1  (Complaint at ¶¶ 2, 4-5, 17, 23-25, Ex. A.)  Plaintiff further alleges that Defendants
2  made the additional following misrepresentations regarding Elations in other forms
3  of advertising, including its website and television commercials: (1) Reduces joint
4  pain; (2) "Clinically proven to improve joint comfort in as little as 6 days;" (3)
5  "Research indicates that taking 1,500 mg of glucosamine and 1,200 mg of
6  chondroitin daily can help improve joint function;" (4) "[T]he ingredients in Elations
7  are known to actually help renew joint cartilage, cushion joints and improve joint
8  flexibility;" and (5) Elations "renews cartilage; cushions joints; improves
9  flexibility." (*Id.* at ¶¶ 4, 17, 26-27).

10  To support his claim that these statements are false and misleading, Plaintiff
11  cites to numerous scientific studies. (Complaint at ¶¶ 30-51.) These studies can be
12  broken down into several categories: (1) studies regarding the effect of glucosamine,
13  alone, or in combination with chondroitin, in the treatment of osteoarthritis (*id.* at ¶¶
14  31, 33-41, 46, 48, 50); (2) studies regarding the effect of glucosamine, alone, or in
15  combination with chondroitin, on the restoration or regeneration of cartilage or a
16  reduced rate of cartilage degeneration (*id.* at ¶¶ 32, 36, 42-44); (3) studies regarding
17  the effect of glucosamine, alone, or in combination with chondroitin, in the
18  maintenance of joints (*id.* at ¶¶ 45, 51); (4) studies regarding the effect of
19  glucosamine on chronic low back pain (*id.* at ¶ 47); and (5) a study concluding that
20  "regardless of the formulation used, no marginal beneficial effects were observed as
21  a result of low glucosamine bioavailability" (*id.* at ¶ 49).

22  In his Complaint, Plaintiff acknowledges there are two studies "purporting to
23  claim that the ingestion of glucosamine can affect the growth or deterioration of
24  cartilage," but attempts to discredit them on the basis that they were both sponsored
25  by a glucosamine supplement manufacturer, the methodologies used had inherently
26  poor reproducibility, and they did not analyze glucosamine *hydrochloride* which is
27  the form of glucosamine found in Elations. (*Id.* at ¶ 52.) Plaintiff therefore contends
28  that these two studies are unreliable and cannot be extrapolated to Elations. (*Id.*)

### 1. *Claims Regarding Healthier Joints, Reducing Pain, Improving Joint Comfort and Flexibility*

Based on the cited studies, the Complaint fails to establish a plausible basis for alleging that Elations' statements regarding healthier joints, reducing pain, and improving joint comfort and flexibility[3] are false and misleading. In other words, Plaintiff does not allege facts that plausibly support the conclusion that Elations does not deliver these benefits to consumers. As argued by Defendants, with regard to these claims, Plaintiff's Complaint suffers several of "the same defects as the complaints in *Eckler*, *Padilla*, *Otto*, and *McCrary*." (Mot. at p. 13.)

In *McCrary v. Elations Co., LLC*, 2013 WL 6402217 (C.D. Cal. Apr. 24, 2013), a class action similarly alleging misrepresentations in Elations advertising, the court found that the first amended complaint failed to establish a plausible basis for the false or misleading nature of Elations advertising claims regarding joint comfort, flexibility, and health because "[a]ll of the studies Plaintiff cites examine whether [glucosamine hydrochloride] and/or [chondroitin sulfate] are effective in treating osteoarthritis." *Id.* at *3. Because "none of the marketing or advertising claims challenged by Plaintiff concern osteoarthritis," and "Elations' packaging explicitly states that the product 'is not intended to diagnose, treat, cure, or prevent any disease,'" the studies do not plausibly demonstrate that Elations does not improve joint comfort, flexibility, or health. *Id.*; *see also McCrary v. Elations Co., LLC*, 2013 WL 6403073, at *9 (C.D. Cal. July 12, 2013); *Eckler v. Wal-Mart Stores,*

---

[3] These representations include the following statements found on Elations' packaging: (1) "Healthier Joints;" (2) "Improves Joint Comfort in 6 Days;" (3) "Improves Joint Comfort When Used Everyday;" (4) "Helps Improve Your Joint Comfort;" and (5) "Helps Improve Your Joint Flexibility." (Complaint at ¶¶ 2, 4-5, 17, 23-25, Ex. A.) They also include the following statements Plaintiff alleges are in other forms of Elations' advertising: (1) reduces joint pain; (2) "[c]linically proven to improve joint comfort in as little as 6 days;" (3) "the ingredients in Elations are known to actually help … cushion joints and improve joint flexibility;" and (4) Elations "cushions joints; improves flexibility." (*Id.* at ¶¶ 4, 17, 26-27).

*Inc.*, 2012 WL 5382218, at *6-7 (S.D. Cal. Nov. 1, 2012) (finding osteoarthritis studies cited in complaint do not lend facial plausibility to claims that product is false or misleading because they do not address the more general claim that glucosamine is good for the body's joints); *Padilla v. Costco Wholesale Corp.*, 2013 WL 195769, at *3 (N.D. Ill. Jan. 16, 2013) (finding studies regarding the ineffectiveness of glucosamine and chondroitin in treatment of osteoarthritis to be inapplicable where product label "does not claim to be effective for treatment of osteoarthritis").  The same is true in this case.  Plaintiff does not allege in his Complaint that Elations made any representations concerning osteoarthritis and the product packaging explicitly states that the product is not intended to diagnose, treat, cure, or prevent any disease, such as osteoarthritis.  (*See* Complaint at Ex. A; Klene Decl. at Ex. A.)  Therefore, the osteoarthritis studies do not lend plausibility to Plaintiff's claims.

Plaintiff attempts to distinguish his Complaint by arguing that not all of the studies cited address the effectiveness of glucosamine and/or chondroitin in treating osteoarthritis. (Opp. at p. 7.) He argues that, unlike the plaintiffs in *Eckler*, *Padilla*, and *McCrary*, he cites studies addressing "Defendants' general claims that glucosamine is good for the body's joints and renews cartilage." (*Id.* at p. 7, lines 13-14.)  Plaintiff further argues Defendants have "overstated the importance of minor ingredients in the Elations products." (*Id.* at p. 1.)  He contends that Defendants' joint health-benefit claims are false and misleading because the cited studies have "found no causative link between the *key active ingredients* present in the Elations products and joint renewal, mobility, and rejuvenation." (*Id*. at p. 2 (emphasis added).)  The Court is not persuaded by these arguments.

Contrary to Plaintiff's contention, Defendants do not generally claim that glucosamine, standing alone, is good for the body's joints and renews cartilage.  As alleged in the Complaint, Defendants claim that *Elations* provides certain joint benefits. (Complaint at ¶¶ 2, 4-5, 17, 23-275, Ex. A.)  As courts have held in similar

cases, the cited studies must have a bearing on the truthfulness of the actual representations made by Defendants. *See Otto*, 2013 U.S. Dist. LEXIS 53287, at *24 (finding none of cited studies "are apposite as they fail to test the precise combination of ingredients in the Products"); *Eckler*, 2012 WL 5382218, at *6 (finding cited studies problematic because none of them address the specific product at issue which consisted of a combination of eleven ingredients); *McCrary*, 2013 WL 6402217 at *4 (finding claims on Elations' packaging cannot be extrapolated to reference osteoarthritis); *Padilla*, 2013 WL 195769, at *3 (finding plaintiff failed to make any connection between the findings and conclusions of the cited studies and the representations appearing on the product label where none of the studies assessed the effectiveness of the same combination of ingredients found in the product). None of the studies cited in the Complaint test Elations or the same combination of ingredients found in Elations, and therefore do not bear on the truthfulness of the representations as to Elations. Accordingly, the Court finds that Plaintiff fails to plausibly plead a claim under the UCL or CLRA as to Defendants' representations regarding healthier joints, reducing pain, and improving joint comfort and flexibility.[4]

### 2.  *Claims Regarding (1) Glucosamine and Chondroitin and (2) Renewal of Joint Cartilage*

The Complaint does, however, establish a plausible basis for alleging that the following representations by Defendants are false and misleading: (1) "[r]esearch

---

[4] "Claims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws." *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013) (citing *In re Clorox Consumer Litig.*, 2012 WL 3642263, at *4 (N.D.Cal. Aug.24, 2012) (collecting cases)). "A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false." *Id*. (citing *In re Clorox Consumer Litig.*, 2012 WL 3642263, at *5). "In contrast, a plaintiff's reliance on a lack of scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to state a claim." *Id*.

1 indicates that taking 1,500 mg of glucosamine and 1,200 mg of chondroitin daily can help improve joint function;" (2) "the ingredients in Elations are known to actually help renew joint cartilage;" and (3) Elations "renews cartilage." (*See* Complaint at ¶¶ 4, 26-27.) Construing the cited studies in the light most favorable to Plaintiff, the Court finds that the cited studies may have a bearing on the truthfulness of these representations.

Plaintiff cites in the Complaint to a European Food Safety Authority opinion from 2009 concluding that "a cause and effect relationship has not been established between the consumption of glucosamine (either as glucosamine hydrochloride or as glucosamine sulphate), either alone or in combination with chondroitin sulphate, and the maintenance of normal joints." (*Id.* at ¶ 45.) While the Complaint does not detail the specifics of the study, the Court finds the allegation bears on the truthfulness of the claim that "[r]esearch indicates that taking 1,500 mg of glucosamine and 1,200 mg of chondroitin daily can help improve joint function" (*id.* at ¶ 26). *See McCrary*, 2013 WL 6402217, at *5 (finding that claims which single out the effectiveness of glucosamine and chondroitin can be refuted with studies examining those ingredients).

The Complaint also cites to studies bearing on the truthfulness of the claim on Elations' website and in one of its commercials that the ingredients in Elations are known to actually help renew joint cartilage. Specifically, Plaintiff cites a February 2004 study in which the authors concluded that "adult cartilage cannot be regenerated." (Complaint at ¶ 32.) Again, while the Complaint does not detail the specifics of the study, the Court finds the allegation bears on the truthfulness of the claims that "the ingredients in Elations are known to actually help renew joint cartilage" and Elations "renews cartilage" (*id.* at ¶¶ 4, 26-27).

Accordingly, the Court finds Plaintiff has plausibly alleged that these particular Defendants' claims are false and misleading under the UCL and CLRA.

///

### 3. *Standing*

Although Plaintiff has plausibly alleged that certain representations by Defendants' are false and misleading, the Court's inquiry does not end there. Defendants argue that even if Plaintiff has plausibly alleged the representations made on the Elations website and in its commercials are false and misleading, Plaintiff lacks standing to pursue his UCL and CLRA claims with regard to Defendants' representations in television and internet advertisements, as Plaintiff did not allege that he saw, heard, or in any way relied upon these statements before purchasing Elations products. (Mot. at p. 13, n. 5; ECF No. 12 ("Reply") at pp. 3-7.) In response, Plaintiff argues that he has "standing to pursue claims based upon advertisements other than the ones he saw." (Opp. at p. 11, lines 14-15.)

To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011) (emphasis in original); *see also* Cal. Bus. & Prof. Code § 17204. This requires a "showing of a causal connection or reliance on the alleged misrepresentation." *Id*. at 326 (citations omitted); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) ("[A] class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."); *Laster v. T-Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005).

Similarly, to establish standing under the CLRA, which declares certain practices in the sale of goods or services to consumers to be unlawful, a plaintiff must allege that he was exposed to an unlawful practice and that the defendant's conduct resulted in a "tangible increased cost or burden to the consumer." *Meyer v.*

1 *Sprint Spectrum LP*, 45 Cal.4th 634, 641-43 (2009). This requires showing "not only that a defendant's conduct was deceptive[,] but that the deception caused them harm." *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009) (citation omitted); *see also Mass. Mutual Life Ins. Co. v. Super. Ct.*, 97 Cal.App.4th 1282, 1292 (2002) (finding the "as a result of" language in Cal. Civ. Code, § 1780(a) imposes a causation requirement). In a claim for false advertising, a plaintiff suing under the CLRA for misrepresentations in connection with a sale must plead and prove that he relied on a material misrepresentation. *Cattie v. Wal-Mart Stores*, 504 F.Supp.2d 939, 946 (S.D. Cal. 2007) (citing *Caro v. Procter & Gamble Co.*, 18 Cal.App.4th 644, 668 (1993)); *Tucker v. Pacific Bell Mobile Servs.*, 208 Cal. App.4th 201, 221 (2012) ("[A]ctual reliance must be established for an award of damages [on a CLRA claim].").

The Complaint does not allege that Plaintiff relied on any representations on the Elations' website, online promotional materials, or in its commercials or demonstrate any causal connection. Indeed, Plaintiff does not allege that he heard or saw an Elations commercial or visited the Elations website prior to purchasing Elations products. Instead, the Complaint only alleges that Plaintiff relied on the product packaging. (Complaint at ¶¶ 11, 30, 53.) In his Opposition, Plaintiff does not argue that he personally relied on representations in Elations' website, online promotional materials, or commercials. Rather, he contends that he "has standing to pursue claims based upon advertisements other than the ones he saw." (Opp. at p. 11, lines 15-16.)

In support of this argument, Plaintiff cites to a Supreme Court of California case, *In re Tobacco II Cases*, for the proposition that "a plaintiff need [not] demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *In re Tobacco II Cases*, 46 Cal. 4th at 327. Rather, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," *i.e.*, if "a reasonable man would attach

1 importance to its existence or nonexistence in determining his choice of action in the
2 transaction in question." *Id.* The Court does not find Plaintiff's argument
3 persuasive on the facts of this case.

4 In *In re Tobacco II Cases*, the Supreme Court of California does not absolve a
5 plaintiff from alleging that a defendant's alleged misrepresentation was an
6 immediate cause of the injury-producing conduct. *Id.* at 326-28. While it is not
7 necessary that a plaintiff alleges the misrepresentation was the "sole or even the
8 predominant or decisive factor influencing his conduct," he must allege that the
9 "representation has played a substantial part, and so had been a substantial factor, in
10 influencing his decision." *Id.* at 326. Moreover, while a plaintiff need not "plead
11 and prove individualized reliance on specific misrepresentations or false statements
12 where…those misrepresentations and false statements were part of an extensive and
13 long-term advertising campaign," a plaintiff is still required to "plead and prove
14 actual reliance to satisfy the standing requirement of [the UCL]." *Id.* at 327-28. In
15 other words, a class representative does not need to plead or prove with "an
16 unrealistic degree of specificity that the plaintiff relied on particular advertisements
17 or statements," but he still must plead reliance. *Id.* at 328.

18 Plaintiff argues that he has alleged an extensive and long-term advertising
19 campaign, thus he is not required to plead individualized reliance on a specific
20 misrepresentation. (Opp. at p. 12; Complaint at ¶ 2.) However, "*Tobacco II* does
21 not stand for the proposition that a consumer who was never exposed to an alleged
22 false or misleading advertising or promotional campaign is entitled to [UCL relief]."
23 *Pfizer Inc. v. Superior Ct.*, 182 Cal.App.4th 622, 632 (2010). "Rather, *In re
24 Tobacco II* stands for the narrower, and more straightforward proposition that, where
25 a plaintiff has been exposed to numerous advertisements over a period of decades,
26 the plaintiff is not required to plead with an unrealistic degree of specificity [the]
27 particular advertisements and statements that [he or s]he relied upon." *Kane v.
28 Chobani, Inc.*, 2013 WL 5289253, at *9 (N. D. Cal. 2013) (internal quotations and

1  citation omitted). Here, Plaintiff does not allege that he was exposed to the long
2  term advertising campaign. Nor does he allege that he purchased Elations products
3  in reliance on Elations' website, online promotional materials, and television
4  advertising, but cannot point to an individual advertisement. Rather, he alleges that
5  he relied solely on the representations on the product packaging.

6  Next, Plaintiff argues that the issue of whether he has standing to assert claims
7  for unnamed class members based on misrepresentations he did not view should be
8  addressed at the class certification stage, not on a motion to dismiss. (Opp. at pp.
9  12-15.) He cites to several cases addressing whether a plaintiff has standing to
10 assert claims for unnamed class members based on products he or she did not
11 purchase. (*Id*.) In that situation, "[t]he majority of courts that have carefully
12 analyzed the question hold that a plaintiff may have standing to assert claims for
13 unnamed class members based on products he or she did not purchase so long as the
14 products and alleged misrepresentations are substantially similar." *Brown v. Hain*
15 *Celestial Group, Inc*., 913 F.Supp. 2d 881, 890 (N.D. Cal. 2012). However,
16 Defendants argue, and the Court agrees, that the cases cited by Plaintiff are
17 inapposite. (Reply at pp. 4-5.) In each of the cited cases supporting Plaintiff's
18 argument, the plaintiff had standing in his own right to bring a claim and the only
19 question was whether he could bring substantially similar claims on behalf of others.
20 Here, Plaintiff is required to establish standing in his own right[5] and he has not done

---

[5] *See e.g., Mazza v. American Honda Motor Co., Inc*., 666 F.3d 581, 595-96 (9th Cir. 2012) (noting that revised UCL imposes reliance requirement on named plaintiff ); *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); Cal. Bus. & Prof. Code §§ 17203–17204 (authorizing representative UCL claims on behalf of others only if the

1  so. *See McCrary*, 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013) ("Plaintiff did
2  not actually rely on any website statements and does not have standing to bring
3  [UCL and CLRA] claims based on those statements."); *Durell v. Sharp Healthcare*,
4  183 Cal. App. 4th 1350, 1363 (2010) (affirming dismissal of UCL claim where
5  plaintiff did not claim that he ever visited the defendant's website which contained
6  the alleged misrepresentations). Therefore, while Plaintiff has plausibly pled that
7  various statements from Defendants' website and television commercials are false
8  and misleading, he did not allege in the Complaint that he was exposed to and relied
9  on Defendants' website, television commercials, or any long-term advertising
10 campaign. Accordingly, the Court finds Plaintiff does not have standing to bring his
11 claims based on those representations under the UCL and CLRA.

### D. Plaintiff's Breach of Express Warranty Claim

To prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, 2012 WL 2861160, at *4 (S.D. Cal. 2012) (citing *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 1227 (2010)). Plaintiff alleges that he formed a contract with Defendants at the time he purchased Elations products. (Complaint at ¶ 86.) He further alleges that the "terms of that contract include the promises and affirmations of fact made by Defendants on the Elations product labels and packages," and that these representations were express warranties and became part of the basis of the bargain. (*Id.*) Lastly, Plaintiff contends Defendants breached the express warranties "by not providing the Elations products that could provide the benefits" described on the labels and packaging. (*Id.* at 88.) For the reasons discussed already herein, Plaintiff fails to plausibly plead a claim for breach of express warranty.

---

claimant meets the standing requirements).

1     In order to plead a breach of express warranty, Plaintiff must allege sufficient
2  facts showing that Defendants' representations are false. *See McKinnis v. Kellogg*
3  *USA*, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (finding plaintiffs failed to
4  allege sufficient facts to make out a claim for breach of express warranty where the
5  representation was true); *Shein v. Canon U.S.A., Inc.*, 2009 WL 1774287, at *4
6  (C.D. Cal. June 22, 2009) (dismissing breach of express warranty claim where
7  "[e]ven if the statements on the replacement cartridges are warranties that could
8  form the basis for a breach of warranty claim, plaintiffs have failed to allege that any
9  statement made on the packaging or labels of the ink cartridges is inaccurate"); *Tae*
10 *Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 2014 WL 211462, at *12 (C.D. Cal.
11 Jan. 9, 2014) (dismissing breach of express warranty claim in part because the
12 marketing brochure contained an unquestionably true statement).
13    As discussed above, Plaintiff has not plausibly alleged that the representations
14 on Elations label and packaging are false or misleading.  Accordingly, the Court
15 finds Plaintiff has failed to plausibly plead a breach of warranty claim.

## IV.  CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS WITH LEAVE TO AMEND** Defendants' Motion to Dismiss (ECF No. 9).

**IT IS SO ORDERED.**

**DATED:  August 4, 2014**

Hon. Cynthia Bashant
United States District Judge